UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **TONY CLARK**,<br>Petitioner,<br><br>vs.<br><br>**ADAM DOUGLAS**,[1]<br>Respondent. | **2:23-CV-11546-TGB-DRG**<br><br>HON. TERRENCE G. BERG<br><br>**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY** |

Petitioner Tony Clark has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court convictions for second-degree murder, MCL § 750.317, two counts of assault with intent to do great bodily harm less than murder, MCL § 750.84, armed robbery, MCL § 750.529, felon in possession of a firearm, MCL § 750.227b, and possession of a firearm during the commission of a felony, second offense, MCL § 750.227b. Clark raises nine claims for relief. For the reasons stated below, the Court **DENIES** the Petition and **DECLINES** to issue a certificate of appealability.

[1] The proper respondent in a habeas case is the custodian of the facility where the petitioner is incarcerated. *See* Rule 2(a), Rules Governing Section 2254 Cases. Clark is currently incarcerated at the Saginaw Correctional Facility ("SRF"), in Freeland, Michigan Thus, the Court substitutes the warden at SRF, Adam Douglas, as Respondent.

## I. BACKGROUND

Clark's convictions arise from the fatal shooting of Derrick Lindsay and related crimes. The crimes occurred during the early morning hours of March 5, 2016, outside an after-hours club known as the VIP Club in Detroit. That morning, Derrick Lindsay, Marquis Turner, Jalen Watkins, Shelton McCarainey, Jamicka Smith, and DeMarco Chandler drove to the Club. As McCarainey and Chandler approached the entrance, a man later identified by Turner and Watkins as Clark pulled out a handgun and demanded that they hand over their belongings. McCarainey surrendered cash, his iPhone and his Cartier glasses. As Lindsay, Turner and others approached the front door, Clark ordered them to stop and warned that he would shoot if they ran. Clark then shot Lindsay in the abdomen, killing him, and shot Turner, who survived.

Following a jury trial in Wayne County Circuit Court, Clark was convicted of second-degree murder, two counts of assault with intent to do great bodily harm, armed robbery, felon in possession of a firearm, and second-offense felony-firearm. On November 15, 2016, he was sentenced to 70 to 105 years for the second-degree murder conviction, 20 to 40 years for each assault with intent to do great bodily harm conviction and for the armed robbery conviction, and five years for the felon-firearm, second offense conviction.

The Michigan Court of Appeals affirmed Clark's convictions. *People v. Clark*, No. 336656, 2018 WL 1767447, at *2 (Mich. Ct. App. Apr. 12, 2018).[2] Clark filed an application for leave to appeal in the Michigan Supreme Court, and that court vacated the part of the Michigan Court of Appeals' opinion addressing the denial of Clark's request for appointment of a defense expert in computer science and remanded for reconsideration of that issue in light of *People v. Kennedy*, 917 N.W.2d 355 (Mich. 2018). *People v. Clark*, 920 N.W.2d 578 (Mich. 2018). The Michigan Supreme Court denied leave to appeal in all other respects. *Id.*

On remand, the Michigan Court of Appeals again affirmed Clark's convictions. *People v. Clark*, No. 336656, 2019 WL 1924691 (Mich. Ct. App. Apr. 30, 2019).

Clark then filed a motion for relief from judgment in the trial court, which denied relief. *See People v. Clark*, No. 16-002944 (Wayne Cnty. Cir. Ct. May 19, 2020). The Michigan Court of Appeals and Michigan Supreme Court denied Clark leave to appeal the trial court's decision. *See People v. Clark,* No. 355461 (Mich. Ct. App. Jan 27, 2021); *People v. Clark*, 977 N.W.2d 530 (Mich. July 28, 2022).

---

[2] Clark also attempted to file a pro se supplemental brief, but the brief was untimely, and the Michigan Court of Appeals denied his motion to permit the late filing of his brief. *See* ECF No. 6-17, PageID.882.

Clark then filed the instant Petition for a writ of habeas corpus through counsel, raising these claims:

> I. The police destruction of the surveillance video of the incident before trial and before showing the video to the defense violated Clark's Fourteenth Amendment right to due process.
>
> II. The trial court's failure to give an adverse-inference jury instruction regarding the lost surveillance video violated the due process clause of the Fourteenth Amendment.
>
> III. There was insufficient evidence presented at trial to establish Clark's identity as the shooter beyond a reasonable doubt, in violation of the due process clause of the Fourteenth Amendment.
>
> IV. Trial counsel was constitutionally ineffective for failing to object to portions of McCann's testimony about Clark robbing McCann.
>
> V. The trial court denied Clark's request for the appointment of a defense expert in computer forensics, in violation of the due process clause of the Fourteenth Amendment.
>
> VI. The public was excluded from jury selection without the trial court considering reasonable alternatives to the exclusion or finding an overriding interest in the exclusion, in violation of Clark's right to a public trial under the Sixth and Fourteenth Amendments to the United States Constitution.
>
> VII. The prosecutor (a) violated the trial court's order barring testimony concerning what the police saw on a surveillance video that was "lost" before it was disclosed to the defense, and (b) mischaracterized the testimony of Sharita McCann, in

> violation of the due process clauses of the United States and Michigan Constitutions.
>
> VIII. Trial counsel was constitutionally ineffective for failing to object to (a) the exclusion of the public from jury selection, (b) the testimony regarding what the detective saw on the lost surveillance video, and (c) the prosecutor's mischaracterization of Sharita McCann's testimony.
>
> IX. Appellate counsel was constitutionally ineffective for failing to raise the foregoing claims on direct appeal.

ECF No. 1.

Respondent has filed an answer in opposition asserting that a portion of Clark's fifth claim is unexhausted and that he has waived/procedurally defaulted his sixth claim. ECF No. 5. In his reply, Clark expressly abandoned his third claim regarding sufficiency of the evidence and his fifth claim regarding appointment of an expert witness. ECF No. 7.

## II. LEGAL STANDARD

A habeas petition filed under Section 2254(d) of Title 28 of the United States Code is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an

unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 548 U.S. 122, 124–25 (2018) (quoting 28 U.S.C. § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation modified).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Also, a state-court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. DISCUSSION

### A. Destruction of Surveillance Video

In his first claim, Clark argues that his right to due process was violated because a surveillance video of the incident was not properly downloaded by police before it was returned to the VIP Club, where it was subsequently destroyed and therefore unavailable to the defense. ECF No. 1, PageID.8–9.

The Due Process Clause requires the State to disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485 (1984). The Supreme Court has established different standards for determining whether the failure to preserve evidence violates due process depending on whether the missing evidence is materially exculpatory, *see Trombetta*, 467 U.S. at 489, or the missing evidence is merely "potentially useful." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

When material exculpatory evidence is not preserved, due process is violated regardless of the government's good or bad faith. *Trombetta*, 467 U.S. at 489. Evidence is materially exculpable if its "exculpatory value ... was apparent before the evidence was destroyed" and "comparable evidence is unavailable by other reasonably available means." *Id.* at 488–89.

However, "the Due Process Clause requires a different result when … deal[ing] with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 56. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58. A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence. *See Malcum v. Burt*, 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003) (Hood, J.).

In this case, the Michigan Court of Appeals applied the correct standard of review and concluded that Clark failed to show that the video evidence was favorable or that the police acted in bad faith. The court reasoned:

> Here, defendant has not shown that the lost video evidence was potentially exculpatory or that the police acted in bad faith. In his appellate brief, defendant quotes portions of the grand jury testimony of Detective Gary Przybyla, the officer-in-charge, indicating that the lost video showed defendant committing the crime. At the hearing on defendant's motion to dismiss the charges due to the loss of the video evidence, the prosecutor stated that the video showed someone committing the crime but that "you cannot make out who those people are because it's too dark. The facial features are not clear enough, so it's not exculpatory because it—it's not exculpatory as to this Defendant or anyone else because you

> really can't see or make out who that person is." In either event, whether the video showed defendant committing the crime or the person committing the crime could not be identified from the video because it was too dark, defendant has not presented any evidence that the video was potentially exculpatory. Nor is there evidence of bad faith on the part of the police. As Przybyla indicated, the video was not downloaded correctly by the police, and the original video was erased by the owner of the VIP club after the police returned the video equipment to the owner. Defendant has offered no evidence contradicting this explanation of how the video was lost. At most, the record reflects negligence on the part of the police in failing to ensure that the video was downloaded correctly before returning the video equipment to the owner of the VIP club. Mere negligence does not constitute bad faith. *See Youngblood*, 488 U.S. at 58 (finding no evidence of bad faith where the failure of the police to preserve evidence could "at worst be described as negligent."). Because defendant has failed to demonstrate that the lost video was potentially exculpatory or that the police acted in bad faith, he has not established a due process violation. …

*Clark*, 2018 WL 1767447, at *2.

Clark has not shown that this decision was contrary to, or an unreasonable application of clearly established federal law.

Clark argues that inconsistencies between Detective Przybyla's and the prosecutor's descriptions of the missing video support an inference that the video had exculpatory value. ECF No. 7, PageID.1569. The prosecutor said the video was "too dark" to see the shooter's "facial features." ECF No. 6-8, PageID.273. Clark argues that the prosecutor's statement supports the defense theory that darkness prevented reliable

identification of the shooter, undermines the identifications by Turner and Watkins, and corroborates testimony of three witnesses who said it was too dark to identify the shooter. ECF No. 7, PageID.1569. Clark concludes that the missing video was materially exculpatory because it would have bolstered the defense challenge to the eyewitness identifications and created a reasonable probability of a different verdict.

The Michigan Court of Appeals reasonably rejected Clark's argument. At most, the missing video was potentially useful, not materially exculpatory. Whether the video depicted Clark as the shooter or whether it was too dark to identify anyone, its exculpatory nature was speculative. As the Supreme Court explained in *Youngblood*, evidence that merely "could have been subjected to tests, the results of which might have exonerated the defendant," is only potentially useful and therefore requires proof of bad faith. 488 U.S. at 57. Indeed, in *Youngblood*, the Court held that the failure to preserve semen samples that may have excluded the defendant as the perpetrator did not violate due process absent bad faith because "[t]he possibility that the semen samples could have exculpated respondent if preserved or tested is not enough to satisfy the standard of constitutional materiality." *Id.* at 56 n.*. Likewise, in this case, there was only the possibility that review of the missing videotape would have aided the defense. The Michigan Court of Appeals therefore reasonably concluded that the video was potentially

exculpatory rather than materially exculpatory.

Because the video was only potentially useful evidence, Clark was required to show that the police acted in bad faith. *Youngblood*, 488 U.S. at 57. Clark has not made this showing. The undisputed evidence established that the video was lost because the police failed to download it correctly before returning the recording to the nightclub owner, who later erased the recording. At most, this demonstrates negligence, which is insufficient to establish bad faith under *Youngblood*. *Id.* at 58. Even gross negligence in failing to preserve potentially exculpatory evidence does not satisfy the bad faith requirement. *United States v. Wright*, 260 F.3d 568, 571 (6th Cir. 2001). Accordingly, the Michigan Court of Appeals' decision was not contrary to or an unreasonable application of clearly established Supreme Court law.

### B. Adverse Inference Instruction

Next, Clark argues that the trial court violated his right to due process when it refused to give an adverse inference instruction related to destruction of the surveillance video. ECF No. 1, PageID.9.

The Michigan Court of Appeals denied the claim during Clark's appeal of right as follows:

> Defendant's jury instruction argument is devoid of merit. As explained earlier, there is no evidence that the police or the prosecutor acted in bad faith in the loss of the video evidence. Therefore, the trial court properly declined to instruct the jury

> that the missing video would have been favorable to defendant. *See People v. Davis*, 199 Mich. App. 502, 514–515; 503 N.W.2d 457 (1993), overruled on other grounds by *People v. Grissom*, 492 Mich. 296 (2012) (holding that the trial court did not err in declining to give an adverse inference instruction where the defendant failed to show that the prosecutor acted in bad faith in failing to produce evidence); *see also* 23A C.J.S. Criminal Procedure and Rights of Accused § 1862 ("An instruction ... is appropriate only where the state's failure to preserve or collect the missing evidence was intentional, and the potentially exculpatory nature of the evidence was apparent at the time it was lost or destroyed.").

*Clark*, 2018 WL 1767447, at *2.

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established federal law. For the reasons discussed above, the state court reasonably concluded that the police did not act in bad faith when the videotape evidence was not preserved. And Clark has not identified any clearly established Supreme Court precedent that entitled him to an adverse inference instruction under these circumstances.

For these reasons, Clark is not entitled to federal habeas relief on this claim.

### C. Right to a Public Trial

In his sixth claim of error, Clark argues that the trial court violated his right to a public trial when a court officer asked the public to wait in the hallway during *voir dire* because many jurors were expected and

there was limited seating. ECF No. 1, PageID.14. Clark also asserts in his eighth claim that defense counsel was ineffective for failing to object to the closure of the courtroom. *Id.* PageID.16.

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a ... public trial...." U.S. Const. amend. VI. "[T]his right extends to the States," *Presley v. Georgia*, 558 U.S. 209, 212 (2010), and under *Waller v. Georgia*, 467 U.S. 39, 48 (1984), any courtroom closure must be no broader than necessary to protect an overriding interest that is likely to be prejudiced absent the closure. "[T]here are some circumstances when [courtroom closure] is justified," and the right to a public trial "is subject to exceptions." *Weaver v. Massachusetts*, 582 U.S. 286, 297–98 (2017).

**1.**

Respondent maintains that this claim is waived, procedurally defaulted, and meritless. Because procedural default is dispositive, the Court begins there.

The doctrine of procedural default applies when (1) a petitioner fails to comply with a state procedural rule, (2) the rule is actually relied upon by the state courts, and (3) the procedural rule is "adequate and independent" to foreclose review of the federal constitutional claim. *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Jones v. Howard*, 790 F. Supp. 3d 601, 612 (E.D. Mich. 2025) (White, J.). To determine

whether a court relied on a state-law procedural default, the Court may look through unexplained orders to the last reasoned opinion. *Hartman v. Yost*, 146 F.4th 463, 474 (6th Cir. 2025) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991)), *cert. denied*, No. 25-950, 146 S. Ct. 2571 (Apr. 20, 2026).

Clark first raised this claim in his motion for relief from judgment. The state trial court denied relief because Clark failed to object to the courtroom closure during *voir dire*. ECF No. 6-16, PageID.852–54. The trial court explained that, had counsel timely objected, it could have determined "whether the exclusion of the public during *voir dire* was narrowly tailored to address the court's need for seating space for jurors or if any other alternatives would have been reasonable to accommodate members of the public." *Id.* at PageID.853.

Clark argues that the contemporaneous objection rule is unconstitutional as applied here. *See* ECF No. 7, PageID.1596–98. What counts as an "adequate procedural rule is a question of federal law." *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021). A rule may be inadequate if it violates the United States Constitution. *Id.* If a rule is unconstitutional, "it cannot serve as an adequate basis for the state court's decision ... under the adequate and independent state ground doctrine." *Id.* (citation modified).

Clark maintains that the contemporaneous objection rule is inadequate here because "it directly conflicts with the constitutional rule set forth in *Presley* that 'trial courts are required to consider alternatives to closure even when they are not offered by the parties.'" ECF No. 7, PageID.1597. Neither *Presley* nor *Waller* involved an unobjected-to courtroom closure. As other courts have recognized, those decisions do not require a trial court to *sua sponte* consider alternatives to closure when no objection is made. *See Downs v. Lape*, 657 F.3d 97, 108 (2d Cir. 2011) ("As both *Presley* and *Waller* involved a trial court's response to a registered objection, neither decision requires courts to justify or consider alternatives to closure when...no objection is made."); *Addai v. Schmalenberger*, 776 F.3d 528, 534 (5th Cir. 2015) ("However, this is not a case in which a party objected to the closure, which would require the procedure in *Waller*."). Accordingly, the contemporaneous objection rule is not unconstitutional as applied here and therefore constitutes an adequate and independent state procedural ground. Clark's public trial claim is procedurally defaulted.

**2.**

A procedurally defaulted claim may be reviewed only if the petitioner establishes either (1) cause for the default and actual prejudice, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *See Coleman v. Thompson*, 501 U.S.

722, 750 (1991). Clark satisfies neither exception.

Clark argues that trial counsel's failure to object to the closure establishes cause to excuse the default of this claim. "Generally speaking, counsel's deficient performance in state court can serve as grounds for excusing a petitioner's procedural default." *Williams v. Burt*, 949 F.3d 966, 973 (6th Cir. 2020). To establish ineffective assistance of counsel, a petitioner must show that counsel's performance was so deficient that it "fell below an objective standard of reasonableness" and that the deficient performance resulted in prejudice to the defense, such that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, (1984).

Even assuming that counsel performed deficiently by failing to object, Clark cannot establish prejudice. The Supreme Court has held that, even assuming that a failure to object to a courtroom closure is deficient performance, prejudice is not presumed, and a petitioner must demonstrate that his defense was actually prejudiced by the failure to object. *Weaver v. Massachusetts*, 582 U.S. 286, 300–01 (2017). Clark has failed to show that the closure of the courtroom during jury selection affected the fairness, integrity, or public reputation of the trial. Nor has Clark persuaded the Court that—given the deferential standard of review under AEDPA—there is a "reasonable probability" that he would

have obtained federal habeas relief on his public trial claim if the claim had not been procedurally defaulted by counsel's failure to object. *See Williams*, 949 F.3d at 978.

**3.**

The only remaining option for defeating procedural default is to show that failure to consider this claim will result in "a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Establishing a fundamental miscarriage of justice requires a showing of actual innocence. *See Dretke v. Haley*, 541 U.S. 386, 393 (2004). Clark does not argue that a fundamental miscarriage of justice will result from failure to review this claim.

**D. Prosecutorial Misconduct**

In his seventh claim of error, Clark argues that the prosecutor committed misconduct when she allegedly violated the trial court's order barring testimony regarding the lost surveillance video and allegedly mischaracterized Sharita McCann's testimony. ECF No. 1, PageID.14–16.

Under *Darden v. Wainwright,* 477 U.S. 168 (1986), a prosecutor's improper comments violate a criminal defendant's constitutional rights if they "'so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct

entails much more than conduct that is "undesirable or even universally condemned." *Id.* at 181 (internal quotation omitted). To constitute a due process violation, the conduct must have been "so egregious so as to render the entire trial fundamentally unfair." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citations omitted).

The *Darden* standard "is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (alteration in original) (quotation omitted). "That leeway increases in assessing a state court's ruling under AEDPA," as this Court "'cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites ... other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable.'" *Stewart v. Trierweiler*, 867 F.3d 633, 638–39 (6th Cir. 2017) (quoting *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015)).

Before trial commenced, defense counsel moved to dismiss the case because the surveillance video was lost. The trial court denied the motion. Clark argues that, during that hearing and immediately before trial commenced the next day, the trial court determined that Detective Przybyla could not testify as to what he saw on the lost video.[3] Clark

---

[3] Respondent contends that the restriction was not imposed by the trial court but instead resulted from an agreement between the parties.

contends that the prosecutor violated the trial court's pretrial order by eliciting testimony that Detective Przybyla saw the shooting on the original surveillance video before it was lost. He argues that this testimony improperly implied that the detective had seen Clark commit the shooting, suggesting the existence of highly incriminating evidence that the defense could not inspect or challenge. Clark maintains that this denied him a fair trial.

The last state court to address the merits of this claim was the trial court in its order denying the motion for relief from judgment. In that order, the trial court held:

> The defendant alleges that the prosecutor violated the court's order barring the testimony of what the officer who downloaded the surveillance video saw on the video of the shooting. The defendant admits that the prosecutor did not directly ask the officer, and the officer did not directly answer what he saw on the video. The defendant takes issue with the officer stating that he was able to see the scene of the shooting on the video but it was downloaded wrong and could no longer be seen, "so it didn't record the actual shooting." The defendant alleges that this testimony implied the existence of strong evidence of guilt that cannot be refuted due to the missing video. The defendant argues that the jury must have assumed that he was seen on the video because he was charged with the murder. The defendant speculates about what the jury may have implied from the loss of the video. The defendant's claim that the prosecutor committed misconduct

---

The Court need not resolve this dispute because, even assuming that the ban was court-imposed, Clark is not entitled to relief.

> on this issue is without merit. The defendant admits that the prosecutor did not violate the court's order to bar testimony of what the officer may have seen on the lost video. At a later evidentiary hearing the prosecutor stated that the video was so poor that no one could have been identified as the shooter. The defendant was convicted on the basis of testimony from several witnesses. There was no testimony about the contents of what may have been on the missing video.

ECF No. 6-16, PageID.854.

The state court's decision is not unreasonable. Detective Przybyla did not testify about the precise contents of the lost surveillance video. Clark's claim depends on speculation about what the jury may have inferred. At most, the testimony established that the downloaded copy did not capture the shooting. Under the AEDPA, the Court cannot conclude that the state court acted unreasonably in rejecting Clark's contrary interpretation of the testimony, which rests on speculation rather than the record itself.

Clark's second prosecutorial misconduct claim is likewise meritless. Clark argues that the prosecutor mischaracterized McCann's testimony in her closing when she made the following argument:

> [Clark] told [McCann] well I can't go to the VIP club anymore because I shot somebody up there and I shot him in the stomach. How would Ms. McCann know that Mr. Lindsay got shot in the stomach if the defendant didn't tell her?
>
> She doesn't know these people. She never met them before. She made her statement to the police when she was [shot] by defendant on March 9th. ... [S]he went to a grand jury and

testified on 3-11, March 11th, right when this happened.

ECF No. 6-12, PageID.673.

Clark argues this was improper because McCann did not mention Clark's confession until her third statement to police which was given three days after her first statement. ECF No. 7, PageID.1609. The trial court issued the last reasoned decision addressing this claim when denying the motion for relief from judgment. The court rejected the claim, holding that the prosecutor's characterization of McCann's statements during closing argument did not render the trial fundamentally unfair. ECF No. 6-16, PageID.854–55. The trial court noted that the jury heard McCann explain why her initial statements to police omitted the defendant's confession and why her later statements included it. *Id.* The trial court concluded that the prosecutor's characterization of McCann's statements during closing argument did not deprive the defendant of a fair trial. *Id.*

The prosecutor's statement was isolated and not so persistent that it infected the trial with unfairness. *Darden*, 477 U.S. at 181. The trial court also instructed the jury that it was only to consider properly admitted evidence and that attorneys' statements and arguments are not evidence. *See* ECF No. 6-12, PageID.711. Jurors are presumed to follow the court's instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Given this presumption and the brief nature of the prosecutor's

statement, the Michigan Court of Appeals decision was not an unreasonable application of *Darden*.

**E. Ineffective Assistance of Counsel**

In his fourth and eighth claims, Clark asserts that he was denied the effective assistance of counsel. ECF No. 1, PageID.13, 16. Specifically, he argues that counsel failed to object to the portion of McCann's testimony referencing Clark's robbery and shooting of her, failed to object to Detective Przybyla's testimony regarding the lost surveillance video, and failed to object to the prosecutor's closing argument regarding Sharita McCann's testimony. *Id.*

As set forth above, to prove counsel's ineffectiveness, a petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687. To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Id.* at 694.

Federal claims of ineffective assistance of counsel that have been adjudicated on the merits by a state court are subject to both the deferential *Strickland* standard described above and to the deferential

standard of the AEDPA. *See Tackett v. Trierweiler*, 956 F.3d 358, 373 (6th Cir. 2020) (describing *Strickland* standard in context of habeas petition). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Id.* (internal punctuation and citation omitted).

**1.**

On direct appeal, the Michigan Court of Appeals rejected Clark's argument that counsel was ineffective for failing to object to McCann's testimony:

> [A]lthough counsel could have potentially objected under MRE 404(b) to evidence that defendant robbed and shot McCann, defendant's ineffective assistance claim is nevertheless without merit because it appears from the record that counsel made the strategic decision to forgo any objection to McCann's testimony regarding the robbery and shooting at her home in order to use this evidence to discredit McCann and cast doubt about defendant's guilt. In particular, on cross-examination, defense counsel elicited an acknowledgement from McCann that she wanted defendant to spend the rest of his life in prison for what he did to her and that she understood he was only receiving 15 years' imprisonment for the charges related to shooting her. Defense counsel also questioned McCann about the fact that in her initial statements to police about defendant's assault on her, she did not disclose the fact that defendant had confessed to committing the crimes at issue in the instant case. Defense counsel made these same points in closing argument and also stressed that the bullet recovered from Lindsay's body could

> not be matched to the bullet recovered from the floor of McCann's home. These arguments and credibility challenges would not have been possible without the admission of McCann's testimony concerning defendant's assault on her. The alternative would have been for the jury to hear only McCann's testimony that defendant confessed to committing the instant crimes without hearing the additional testimony that provided a basis for defense counsel to challenge McCann's credibility. Defendant has thus failed to overcome the presumption that the declination to object to McCann's testimony about defendant's assault on her constituted a sound trial strategy. [*People v.*] *Petri*, 279 Mich. App. [407] at 411 [2008]. That a strategy is unsuccessful does not make defense counsel's performance deficient. *Id.* at 412.

*Clark*, 2018 WL 1767447, at *4

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established federal law. Clark has not overcome the strong presumption that counsel made a reasonable strategic decision to attack McCann's credibility by examining her motive for testifying and her inconsistent prior statements. Accordingly, Clark has not shown that the state court's rejection of this ineffective assistance claim was unreasonable.

**2.**

Clark next argues that counsel was ineffective for failing to object to Detective Przybyla's testimony about the lost surveillance video. As discussed above, however. Clark has not shown that Detective Przybyla's testimony was improper. Because any objection would have lacked merit,

he cannot demonstrate that the trial court unreasonably concluded that counsel was not ineffective for failing to object.

**3.**

Clark next claims that counsel was ineffective for failing to object when the prosecutor allegedly mischaracterized Sharita McCann's testimony during closing argument. Even assuming the prosecutor misstated when McCann told police that Clark had confessed to her, Clark has not shown that he was prejudiced by the mistake. As discussed above, the jury heard McCann's testimony and was instructed that the attorneys' arguments were not evidence. Under these circumstances, Clark has not shown a reasonable probability that, had counsel objected, the outcome of the trial would have been different. Relief is denied on this claim.

## F. Ineffective Assistance of Appellate Counsel

In his final claim of error, Clark argues that his appellate attorney was ineffective for failing to raise claims that Clark's right to a public trial was violated during jury selection, the prosecution engaged in misconduct by presenting Detective Przybyla's testimony about the surveillance video and mischaracterizing McCann's testimony, and that counsel was ineffective for failing to object to these errors. ECF No. 1, PageID.16.

The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel on an appeal of right. *See Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985). But counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751–52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

Clark fails to show that his appellate counsel's decision to raise the claims presented in an appellate brief and omit others fell outside the wide range of professionally competent assistance. The Court has determined that the claims omitted on direct review lack merit. Appellate counsel is not ineffective for failing to raise an issue that lacks merit. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010). Relief is denied on this claim.

## IV. Conclusion

For the reasons stated above, the Court **DENIES** the petition for a writ of habeas corpus. The Court further finds that reasonable jurists would not debate this Court's resolution of Petitioner's claims, so the Court **DENIES** a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

DATED: September 30, 2026

BY THE COURT:

s/ Terrence G. Berg
TERRENCE G. BERG
United States District Judge